UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>DONALD TWITO,<br><br>　　　　　Defendant. | Case No.  4:10-po-184-BLW<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

**INTRODUCTION**

On July 26, 2010, the defendant, Donald Twito was charged under 16 U.S.C. § 551 and 36 CFR 261.3(a) in a one count information.  The first count charged Twito with knowingly threatening, resisting, intimidating, or interfering with United States Forest Service Law Enforcement Officer Karl Stocker, while Stocker was engaged in and account of the performance of his official duties in the protection, improvement, and administration of the National Forest System.

The count charged is a Class B misdemeanor.  18 U.S.C. § 3559(a)(7); 36 C.F.R. § 261.1b.  A Class B misdemeanor is a petty offense. 18 U.S.C. § 19.  There is no right to a jury trial where the charge is a petty offense, Fed.R.Crim.P. 58(b)(2)(F).  The Court therefore held a two-day trial beginning on January 13, 2011, and ending January 14,

2011.[1]  The Court received the final proposed findings and facts and conclusions of law on February 1, 2011.

On the basis of the evidence presented, the Court is unable to find beyond a reasonable doubt that the Defendant Donald Twito is guilty of the offense charged. Below are the Court's findings of fact and conclusions of law supporting this decision.

## FINDINGS OF FACT

1.  On July 25, 2010, Defendant Donald Twito was driving his 1975 International 2 ton truck south on Highway 93 in Lemhi County, Idaho.  His brother, Ken Twito, was riding in the passenger seat.  The truck was fully loaded with wood, and Don Twito had attached a bright pink National Forest Service "load tag" to the load of wood.

2.  United States Forest Service Law Enforcement Officer Karl Stocker was on duty and in uniform, and driving a marked law enforcement pickup north on Highway 93 when he observed Twito's truck pass him heading south with the bright pink tag attached to the load of wood.  Neither Don Twito nor Officer Stocker recognized each other as they passed.

3.  As part of his duties, which include enforcing federal laws and regulations on the National Forest, patrolling National Forest lands, protecting resources, and

---

[1] Don Twito was also charged with a felony in a separate case, USA v. Twito, Case No. 4:10-CR-209-BLW. At the request of the parties, the Court consolidated the felony trial with this case.  The felony count was tried before a jury, which acquitted Twito, at the same time this case was heard by the Court.

providing for the safety of the public, Officer Stocker frequently inspects "load tags," like the one attached to Twito's load of wood.

4. Load tags are used to account for the amount of wood taken out of the National Forest on a particular permit. They must have the month and day clipped out in order to be properly validated. Each household is allotted a 10-cord maximum.

5. Having observed the load tag, Officer Stocker turned around his truck to follow Twito's truck. He intended to inspect the load tag affixed to the load of wood.

6. Officer Stocker activated his light bar when he saw the load tag. Twito, however, testified that he never saw Officer Stocker turn around to follow him, and he never saw Officer Stocker's lights activated.

7. Once turned around, Officer Stocker observed the truck stopped in the driveway to the Twito residence. He pulled in and stopped directly behind the truck on the Twitos' narrow driveway.

8. Twito could not see directly behind him, through either his rearview mirror or his sideview mirrors, because the load of wood completely obscured his view. The Court finds that Twito did not know that Officer Stocker was directly behind him.

9. Twito backed his truck into Officer Stocker's vehicle, damaging the front end.

10. Officer Stocker, not aware that Twito could not see his law enforcement Forest Service vehicle and therefore believing Twito had intentionally rammed him, backed up his vehicle to get some distance between him and the Twito truck.[2]

11. Twito immediately stopped, exited his truck to see what he hit, and saw that he had hit a Forest Service truck. At the time Twito exited the truck, the overhead police lights of the truck were not operating and the windows were up. Twito and his brother, Ken, approached the Forest Service truck and it backed up. Don and Ken Twito approached the Forest Service truck a second time and it backed up again.

12. Twito and his brother, Ken, both testified that the lights on the Forest Service truck were not operating and the windows were rolled up when they exited their wood truck. Both also testified that they said nothing when they saw Officer Stocker, and instead waited for Officer Stocker to exit his vehicle. But Officer Stocker did not exit his vehicle, and according to Don and Ken Twito, they waited approximately five minutes while Officer Stocker ignored them. Officer Stocker, on the other hand, testified that Don and Ken Twito immediately began yelling at him to get off their private property upon exiting the truck, and Officer Stocker immediately told them to get back in their truck.

---

[2] It appears to the Court that it was this misunderstanding – Officer Stocker's mistaken belief that Twito saw the Forest Service vehicle behind the truck and intentionally backed into it – which lies at the heart of this incident. It led Officer Stocker to understandably, but incorrectly, assume that the Twitos had hostile, and even violent, intentions. This, in turn, led to the "standoff" in the lane and the "confrontation" on the Twito property. The Court cannot fault Officer Stocker for his conduct in this matter, but the facts point to a mistaken understanding, rather than proof beyond a reasonable doubt that Twito threatened, resisted, intimidated, or interfered with Stocker's law enforcement activities.

13. The Court does not find credible the Twitos' testimony that they simply stood there and did nothing for five minutes, but it is less clear whether the Forest Service lights were activated at the time Don and Ken exited the truck. Officer Stocker insists he activated the light bar, but both Don and Ken Twito testified that they never saw the lights operating. Photographs taken by Stocker immediately after the accident show the lights were off and the truck windows were rolled up. This evidence tends to support Don and Ken Twito's testimony. The Court therefore finds that the Forest Service truck's light bar was not activated during this time period immediately after the accident.

14. It is also unclear whether Don and Ken Twito heard Stocker's instruction to get back into their truck. It is undisputed, however, that Officer Stocker did not exit his vehicle when they approached, and he gave them no instructions other than to return to their truck, which they did.

15. When Don and Ken Twito returned to their truck, Don Twito drove the truck away from the collision. Ken Twito opened the gate to their yard, Don Twito drove through, and Ken Twito locked the gate behind them to keep livestock from escaping.

16. The collision had made Officer Stocker's vehicle inoperable, and Officer Stocker did not attempt to follow them. He instead radioed Lemhi County Sheriff's Office for assistance.

17. Officer Stocker waited in Don and Ken Twito's driveway, outside the locked gate, for approximately fifteen or twenty minutes before Lemhi County Sheriff's Deputy Jeff Stokes arrived.

18. While Officer Stocker waited for Stokes to arrive, Ken and Don Twito drove over to their wood lot, which was in full view of the Forest Service truck and Officer Officer Stocker, and began unloading the wood from their truck with a tractor.

19. Don Twito testified that they entered their yard and starting unloading the logs because Officer Stocker refused to talk with them. While Don Twito did not disobey any direct order given by Officer Stocker by driving away and unloading the wood, the Court finds that Donald and Ken Twito knew that Stocker was a Forest Service officer that had previously issued citations to them for improperly validated load tags.

20. When Deputy Stokes arrived, Officer Stocker and Deputy Stokes climbed over the locked gate and approached Donald and Ken Twito.

21. Don and Ken Twito both told Stocker that he had no business on their private property and that he was trespassing. Stocker accused Don Twito of intentionally ramming his truck, which Don Twito denied. Don Twito claimed that he was backing up the truck to get the mail. He then retrieved the load tag from the cab of his truck, which he had removed from the load of wood, and handed it to Officer Stocker, stating, "Here is what you were after." Stocker could see that the load tag was notched and he told Twito that he knew he was in compliance although Stocker did not inspect it carefully.

22. Twito never disobeyed a direct order given by Stocker.

## CONCLUSIONS OF LAW

1. The Government must prove Defendant Don Twito's guilt beyond a reasonable doubt.

2. Section 261.3(a), 36 C.F.R., prohibits any person from "threatening, resisting, intimidating, or interfering with any forest officer engaged in or on account of the performance of his official duties in the protection, improvement, or administration of the national Forest System."

3. The act of Don Twito backing his wood truck into the Forest Service vehicle was done by accident and without knowledge that the Forest Service truck was behind him. And said action was not done to threaten, resist, intimidate, or interfere with the Forest Service Officer.

4. Even if the Twitos told Officer Stocker to get off their property, the Court cannot find beyond a reasonable doubt that this limited exchange, without more, amounted to "threatening, resisting, intimidating, or interfering" with the Forest Service Officer.

5. Don Twito did not knowingly interfere with Officer Stocker by driving his truck into the yard. Officer Stocker did not command him to remain in the driveway, but instead backed his vehicle up as Don Twito approached and refused to exit his car. When Stocker and Stokes climbed the locked gate, Don Twito volunteered the load tag to Officer Stocker to inspect.

6. Based upon the above Findings of Fact and Conclusions of Law, the Court finds the Defendant Donald Twito not guilty of the misdemeanor charge of knowingly threatening, resisting, intimidating, or interfering with a Forest Service Officer in the performance of his duties.



DATED: March 10, 2011

/s/ B. Lynn Winmill
B. Lynn Winmill
Chief Judge
United States District Court